McHugh, J.
Plaintiffs in this case seek to recover judgment against defendants for the consequences of physical injuries plaintiff George Dahlquist claims to have suffered in an automobile accident that took place on or about June 7, 1994, when a pick-up truck he was driving was hit by a truck driven by defendant Joseph M. Giza, III. The case came on for trial before the undersigned sitting without a jury. Based on the evidence presented during the course of the trial, and the reasonable inferences I have drawn from that evidence, I find and conclude as follows;
On or about June 7, 1994, plaintiff George Dahlquist was employed by the Commonwealth of Massachusetts as an elevator inspector. He also worked part time as a security guard. At approximately 11:00 a.m., Mr. Dahlquist was stopped at a traffic light on Main Street in Wilmington, Massachusetts. Behind him was a ten-wheel refuse truck being driven by Joseph M. Giza, III who was, at the time, in the employ of his father, Joseph M. Giza, Jr., the truck’s owner.[1]
When the light changed, traffic started moving forward. At approximately 150 feet past the intersection, a driver two or three cars ahead of the truck Mr. Dahlquist was driving stopped to make a turn. Mr. Dahlquist stopped. Mr. Giza did not. He struck the rear of Mr. Dahlquist’s pick-up truck and pushed that pick-up truck into a car directly in front of it. At the time of the impact, Mr. Giza’s truck was traveling at approximately 5 miles an hour. Mr. Dahlquist had the clutch on his pick-up truck depressed and, as a consequence, rolled forward rather easily under the impact of Mr. Giza’s truck.
The accident resulted from Mr. Giza’s negligence in following too close to Mr. Dahlquist’s truck in heavy traffic. Although the decision of the driver ahead of Mr. Dahlquist to stop to make a turn was unexpected, a driver is, and should be, required to anticipate the unexpected in traffic in a town’s retail district and, in the exercise of reasonable care, should allow for sufficient time to stop when unexpected events occur.
Mr. Giza’s truck suffered no damage in the accident. The tailgate on Mr. Dahlquist’s pick-up truck was dented in the center and the rear bumper was sub *72 stantially compromised. The gas tank, which is just ahead of the rear bumper, sprung a leak. The front of Mr. Dahlquist’s pick-up truck, however, suffered virtually no damage and the automobile into which Mr. Giza’s truck pushed Mr. Dahlquist’s pick-up truck suffered no damage either.
Upon the impact, Mr. Dahlquist was thrown backward in the pick-up truck and his head struck the rear window in the truck’s cab. When his truck banged into the car in front of him, he was pushed forward but the force of that push was not significant.
Mr. Dahlquist, Mr. Giza and the driver of the car in front of Mr. Dahlquist exchanged papers and Mr. Dahlquist, who felt shaken up at the scene, drove to his own house where he called his employer to say that he would not be in for the rest of the day. In fact, by the time Mr. Dahlquist arrived at his home, he was beginning to feel some pain in his neck and lower back. After calling his employer, he immediately went to bed where he remained for the rest of the day.
Three days after the accident, Mr. Dahlquist, feeling pain in his lower back and in his neck, visited his internist. The internist, Dr. Butchon, prescribed minor pain medication and rest. Mr. Dahlquist’s problems, however, did not improve under that regimen.
On or about June 17, 1994, Mr. Dahlquist consulted Dr. Perry S. Schnier, a chiropractor whose office was nearby, and received treatment from Dr. Schnier for his back and neck pain. He continued to receive treatment from Dr. Schnier from June 17, 1994, through February 20, 1995. During that period he also consulted with Dr. David Burman and Dr. David Klein and received x-rays, MRIs and a CAT scan pursuant to their direction. Those examinations were unremarkable except to the extent that they showed some degenerative changes in Mr. Dahlquist’s spine.
At some point after the accident, Mr. Dahlquist began to experience a ringing in his left ear. The ringing persisted and ultimately he consulted with Dr. Thomas R. Klein, an otolaryngologist, on October 2, 1996. Dr. Klein found that Mr. Dahlquist had tinnitus and some degree of high frequency hearing loss in his left ear. Dr. Klein concluded that both were probably permanent and that both probably were related to the accident of July 7, 1994.
Mr. Dahlquist has been able to work each day since the accident but the pain in his back prevents him from carrying out some of the activities, household and other, that he had carried out before the accident occurred. There has been some decrease in the quality of the physical and emotional relationship between himself and Suzanne Dahlquist, his wife of twenty years. Mr. Dahlquist’s low back pain and the pain in his cervical spine are, I find, permanent. Likewise, I find that the tinnitus and high frequency hearing loss are permanent.
Mr. Dahlquist’s total medical bills related to this accident amount to $7,107.80. Mr. Giza’s negligence was a substantial factor in producing those medical bills. See generally, e.g., Mastaby v. Central Hospital, Inc., 34 Mass.App.Ct. 942, 942-43 (1993) (rescript). I find and conclude that he has reached a medical end result with respect to all of the afflictions flowing from the accident and that no further medical treatment will be necessary for, or helpful with, them in the future.
I further find that Mr. Dahlquist has suffered no diminution of his earning capacity as a result of the accident. He can do everything he did before the accident, albeit sometimes with a little more difficulty. I specifically find that his election not to pursue a promotion to a higher-grade job is unrelated to the accident.
I further find that Mr. Dahlquist has had pain in his back and in his neck and will continue to have pain in both areas for the indefinite future. Mr. Giza’s negligence was a substantial factor in producing some of that pain. Some, however, has flowed and will flow, from arthritis which Mr. Dahlquist has developed and which is unrelated to the accident.[2]
I find that the sum of $30,000 will fully and fairly compensate Mr. Dahlquist for the medical expenses, pain and suffering that he has incurred in the past and, reduced to present value, will incur in the future. All parties agree that any award of damages in this case should be reduced by $2,275 for the so-called PIP payments Mr. Dahlquist has received.
Insofar as Suzanne Dahlquist is concerned, I find that the sum of $5,000 will fully and fairly compensate her for the loss of consortium she suffered as a consequence of the accident.
ORDER
In light of the foregoing, it is hereby ORDERED that judgment enter:
1. In favor of plaintiff George Dahlquist, against defendants Joseph M. Giza, Jr. and Joseph M. Giza, III, jointly and severally in the amount of $27,725.00.
2. In favor of plaintiff Suzanne Dahlquist, against defendants Joseph M. Giza, Jr. and Joseph M. Giza, III in the amount of $5,000.

 There is no contest in this action regarding the respondent superior liability of the elder Mr. Giza for any of the acts or omissions of his son at issue in this case.

 I am aware that in his letter of October 28, 1996, Dr. Donald R. Pettit, M.D., stated that Mr. Dahlquist’s “diagnosis is that of musculo-ligamentous sprains and aggravation of previous arthritis of the lumbar spine with his symptoms an aggravation directly and causally related to the accident. A five percent permanent partial disability is present of both the cervical and lumbar spine consistent with loss of motion secondary to the aggravation of his arthritic phenomenon.” Dr. Pettit also stated in the same letter, however, that Mr. Dahlquist “has had multiple evaluations which are consistent with degenerative arthritis in the cervical and lumbar spines." Under all of the circumstances, I am persuaded that some of the pain from which Mr. Dahlquist is suffering was caused by, and will continue to result from, the degenerative arthritis and not from the accident.